UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAN HUBERT-WARD,                              Case No. 16-14215

    Plaintiff,                              Avern Cohn
    v.                                      United States District Judge

COMMISSIONER OF SOCIAL                        Stephanie Dawkins Davis
SECURITY,                                     United States Magistrate Judge

    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 16)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On December 1, 2016, plaintiff Jan Hubert-Ward filed the instant suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Avern Cohn referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 14, 16).

### B.   Administrative Proceedings

Plaintiff filed an application for a period of disability and disability insurance benefits on November 4, 2012, alleging disability beginning on June 4,

2011.  (Tr. 73).[1]  The claims were initially denied on January 13, 2014.  (*Id.*).

Plaintiff requested a hearing and on September 28, 2015, plaintiff appeared with

counsel, before Administrative Law Judge ("ALJ") Henry Perez, Jr., who

considered the case de novo.  (*Id.*).  In a decision dated October 27, 2015, the ALJ

found that plaintiff was not disabled.  (Tr. 80).  Plaintiff requested a review of this

decision.  (Tr. 64-66).  The ALJ's decision became the final decision of the

Commissioner when the Appeals Council, on October 13, 2016, denied plaintiff's

request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44

(6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.      FACTUAL BACKGROUND

### A.      ALJ Findings

Plaintiff, born July 1, 1957, was 53 years old on the alleged disability onset

date.  (*See* Tr. 207).  She has past relevant work as a childcare teacher.  (Tr. 79).

She stopped working when she injured her back in an accident at work.  (Tr. 89).

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to
the same are identified as "Tr. ", referring to the administrative record page number found in the
lower right corner of each page.

The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since June 4, 2011, the alleged onset date.  (Tr. 75).  At step two, the ALJ found that plaintiff's asthma, osteoarthritis, and degenerative disc disease were "severe" within the meaning of the second sequential step.  (*Id.*).  However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (*Id.*).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours, stand 6 hours, walk 6 hours; push and pull as much as she is able to lift and carry; occasionally climb ramps, stairs, and ladders and scaffolds; occasionally stoop, kneel, crouch, crawl; avoid concentrated exposure to pulmonary irritants.

(Tr. 76).  At step four, the ALJ found that plaintiff was able to perform her past relevant work as a childcare teacher as generally performed.  (Tr. 79).  Therefore, the ALJ determined that plaintiff was not disabled.  (Tr. 80).

B.    Plaintiff's Claims of Error

Plaintiff raises two issues before the Court:  that the ALJ assessed an inaccurate RFC and thus erroneously found work at Steps Four and Five, and that the ALJ made an erroneous credibility determination.  (Dkt. 14, Pl.'s Brief, at p. 9).

According to plaintiff, the assessed RFC does not include all of plaintiff's limitations as required by SSR 85-15, and thus is not supported by substantial evidence.  (*Id.* at p. 12).  The ALJ found that plaintiff retained the RFC to perform light work with exertional limitations and that she was capable of performing past relevant work as a childcare teacher.  (*Id.* at p. 11).  Plaintiff states that the burden is on the Commissioner at Step Five of the sequential review process.  Plaintiff argues that the medical evidence does not support the ALJ's determination that she was capable of standing/walking for 6 out of 8 hours in a workday.  Specifically, the medical evidence shows that her right lower extremity complications and chronic back pain preclude her from standing/walking for extended periods, thus rendering her unable to perform her past work.  (*Id.* at p. 12).  According to plaintiff, at most she could perform sedentary work, but that would direct a finding of "disabled" under Medical Vocational Rule 201.14 because she was 53 years old at the alleged onset date.  (*Id.*).  Plaintiff also argues that the medical evidence shows she cannot perform work at any exertional level.  Dr. Riyadh Kasmikha diagnosed her with lumbar radiculopathy and COPD.  (*Id.* at p. 12-13).  An MRI in

4

June 2014 showed significant disc herniation at L4-5 with neuroforaminal narrowing effecting the L4 and L5 nerve root.  (*Id.* at p. 13).  The disc herniation and subsequent effect on the nerve root are objective signs of lumbar radiculopathy.  Additionally, the ALJ stated during the hearing that the Plaintiff would "grid" at sedentary during the hearing.  (*Id.*) (Tr. 103).  Plaintiff also contends that the ALJ's failure to create an accurate hypothetical question incorporating her limitations is not harmless error.  (*Id.*).

Finally, plaintiff argues that her subjective complaints are supported and not contradicted by the medical evidence and testimony, and thus the ALJ erred in finding her not entirely credible.  (*Id.* at p. 14).  Plaintiff claims that the ALJ used "boilerplate" credibility language stating: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (*Id.*; Tr. 26).  According to plaintiff, her testimony should have been found credible and the case should be remanded.

C.   Commissioner's Motion for Summary Judgment

In response, the Commissioner argues that the RFC is supported by substantial evidence.  (Dkt. 16, Dft.'s Brief, at p. 4).  The Commissioner notes that plaintiff did not challenge the ALJ's reliance on State agency reviewing physician Dr. Langham who assessed an identical RFC, nor does she point to any other

medical opinion (as opposed to medical notes) of record.  (*Id.* at p. 4-5).  If there were a competing treating physician opinion, an ALJ may give greater weight to a state agency reviewing expert's opinion where, as here, it is supported by evidence in the record.  (*Id.*).  The Commissioner notes that state agency reviewing physicians such as Dr. Langham are "highly qualified physicians … who are also experts in Social Security disability evaluation."  (*Id.* at p. 5) (citing 20 C.F.R. § 404.1527(e)(2)(i)).

Although plaintiff stated that the burden is on the Commissioner at Step Five, the Commissioner points out that plaintiff was found disabled at Step Four on the basis of her ability to perform past relevant work, without reaching Step Five. (*Id.* at p. 6).  Plaintiff performed her past relevant work at the medium exertional level, but a claimant is not disabled at Step Four if she can perform the past relevant work as it is generally performed.  (*Id.*) (citing SSR 82-61, 1982 WL 31387, at *2).  The Commissioner further points out that the law stating that a vocational expert's testimony depends on whether the ALJ references all of a claimant's limitations includes that "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."  (*Id.*) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (per curiam)

(citation omitted)).  Plaintiff does not argue that the ALJ's hypothetical question to the vocational expert meaningfully differed from the assessed RFC.

The Commissioner next argues that plaintiff's citation to evidence in her RFC argument is an attempt to invite the court to re-weigh the evidence.  (*Id.* at p. 7).  Rather, the Commissioner contends that it is plaintiff's burden to demonstrate the ALJ's decision is not supported by substantial evidence, and not to simply "marshall[] evidence to suggest [s]he is disabled."  (*Id.*)  In *Oraha v. Comm'r of Soc. Sec.*, No. 2:15-cv-13431-SJM-MKM, plaintiff's counsel represented Oraha. The court in *Oraha* explained that the plaintiff's conclusory arguments that the decision is not supported by substantial evidence is not sufficient; it is not the court's role to re-weigh evidence.  (*Id.*).  Further, plaintiff's recitation of her diagnoses is unavailing as a diagnosis "says nothing about the severity of the condition."  (*Id.* at p. 6-7) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).  The Commissioner also contends that plaintiff's quotation of portions of SSR 85-15 does not amount to a legally cognizable argument, but rather is an argument raised in a perfunctory manner.  (*Id.* at p. 8) (citing *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013)).  Plaintiff has not shown that a reasonable mind would be required to find greater RFC restrictions than those assessed by the ALJ.

The Commissioner next argues that the ALJ's credibility determination is not erroneous.  An ALJ's use of "boilerplate" language is not detrimental if the ALJ has explained his conclusion adequately.  (*Id.* at p. 10) (citing *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)).  The Commissioner contends that the ALJ's credibility determination is explained adequately.  For example, the ALJ found that plaintiff's allegations were "inconsistent with the objective medical findings in the record" (Tr. 79), and the ALJ gave numerous specific examples elsewhere in the decision (Tr. 78-79).  (*Id.*).  Contrary to plaintiff's argument, the Commissioner argues that her allegations are contradicted by medical evidence.  Dr. Langham "mustered" extensive evidence to support his conclusion that plaintiff was only partially credible, and the ALJ gave Dr. Langham's opinion considerable weight. (*Id.* at p. 11; Tr. 113).  Again, the Commissioner argues that plaintiff is attempting to have the Court re-weigh the evidence when she claims that her allegations are supported and should have been found credible.  (*Id.* at p. 11) (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008) (courts "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility")).  Plaintiff has not established any basis for this Court to strike down the ALJ's credibility determination.

D.    Plaintiff's Reply

In reply, plaintiff maintains that the ALJ failed to assess an accurate RFC and erroneously found work at Steps Four and Five and that the ALJ made an erroneous credibility determination.  (Dkt. 18, at p. 1, 2).  Plaintiff restates the arguments raised in her opening brief.

## III.   DISCUSSION

A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

> B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

    "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

    If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

14

C.    Analysis and Conclusions

1.    RFC

The RFC is supported by substantial evidence.  There is no medical opinion in the record that suggests that plaintiff is more limited than what is accounted for in the RFC.  The ALJ's decision not to credit the only functional limitation by a medical provider in the record was not improper here.  In September 2013, Dr. Zeni opined that plaintiff would be restricted to sitting 75% of the time.  (Tr. 324). However, the ALJ found that this restriction was temporary given that plaintiff's impairments had improved, and substantial evidence supports that conclusion. (*Id.*).  For example, in relation to plaintiff's right foot surgery in July 2012, the ALJ noted that she had the hardware removed in June 2013 after experiencing pain at the hardware site, and noted that by October 29, 2013, Dr. Oddo wrote that she was doing "reasonably well over all with the foot."  (Tr. 78, 563).  Dr. Oddo also noted that plaintiff's pain was always there but it was a low level of pain (rating it 3 out of 10 on the pain scale), and that plaintiff is functional.  (Tr. 563).  By December 17, 2013, plaintiff's back and foot pain were going well, plaintiff was still participating in yoga and water therapy, she had normal heel-to-toe progression of gait, there was no real tenderness in the lumbar spine with only minimal SI tenderness, and she reported that her pain was controlled with medication.  (*Id.*).  Plaintiff's back and foot pain flared-up in August 2014 and

15

again in July 2015.  (Tr. 78-79).  However, in October 2014 she reported that her back pain was doing better, but not her foot pain.  (Tr. 79).  In January 2015 she reported that her back pain had settled down and had been doing well on medication.  (Tr. 79, 572).

Aside from Dr. Zeni's temporary 75% sitting limitation, there is no other medical opinion in the record opining on functional limitations or suggesting that plaintiff is more limited than the RFC suggests.  *Richard v. Astrue*, 2011 WL 4688788, at \*5 (N.D. Ohio Oct. 4, 2011) (citing *Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146,151 (6th Cir. 1990) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *Kocher v. Comm'r of Soc. Sec.*, 2015 WL 7307998, at \*5 (S.D. Ohio Nov. 20, 2015), *report and recommendation adopted*,  2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("when 'there is no evidence in the record, of any functional limitations as a result of . . . obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary."); *Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").  Plaintiff does not point to any medical evidence that establishes that her foot and back impairments prevent her from performing light or sedentary work.  It is plaintiff's

burden at this stage to come forward with evidence establishing disability.  *Cargile*

*v. Comm'r of Soc. Sec.*, 2015 WL 2084701, at *4 (S.D. Ohio May 4, 2015) ("It

is plaintiff's burden to provide evidence showing how her impairment has affected

her functioning during the period of alleged disability."); *see also Despins v.*

*Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) ("The mere

existence of . . . impairments . . . does not establish that [the plaintiff] was

significantly limited from performing basic work activities for a continuous period

of time.").  Plaintiff is left with her subjective complaints, but as discussed below,

the ALJ properly considered her complaints to be not entirely credible.  Further,

state agency reviewing consultant Dr. Langham's RFC opinion is consistent with

the ALJ's RFC assessment.  (Tr. 113-15).  No medical opinion contradicts Dr.

Langham's opinion or the assessed RFC.  *Simpson v. Comm'r of Soc. Sec.*, 2014

WL 3845951, at *10 (S.D. Ohio Aug. 5, 2014) ("Because there is no medical

opinion from an acceptable medical source in the record that contradicts [the state

agency consultants'] opinions, the ALJ was entitled to rely on them in formulating

plaintiff's RFC.").

Plaintiff argues that her lumbar radiculopathy and COPD diagnoses from Dr.

Riyadh Kasmikha from Southfield Family Health Center prove she cannot work at

any exertional level.  (Dkt. 14, at p. 12-13).  However, there is no medical record

from Southfield Family Health Center and no record of a diagnosis of lumbar

radiculopathy or COPD, and plaintiff's citations to the record do not contain these diagnoses.[2]  Plaintiff states that her carbon dioxide levels were elevated, supporting a COPD diagnosis.  However, where carbon dioxide levels are noted, there is no indication that they are elevated.  (Tr. 34, 41, 52, 61, 62).  To the extent plaintiff is claiming that her asthma prevents her from performing light work, that argument is belied by her own statement that she has not had a major flare-up since 2013.  (Tr. 100).  In any event, the ALJ included a restriction of avoiding concentrated exposure to respiratory irritants.  (Tr. 76).  Further, mere diagnosis does not equate to a disability or any particular functional limitation.  *See e.g.*, *Jordan v. Colvin*, 2014 WL 5796713, at *5 (E.D. Ky. Nov. 6, 2014) ("[T]the mere fact that a claimant has been diagnosed with a variety of conditions does not equate automatically with any functional limitation.") (citing *Parley v. Sec'y of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a disease] says nothing about the severity of the condition."); *Hill*, 560 Fed. Appx. at 551 ("[D]isability is

---

[2] For example, plaintiff cites "R. 262" to point to a diagnosis from Southfield Family Health Center.  (Dkt. 14, at p. 12).  However, the record at 262 is a page from plaintiff's Disability Report saying nothing of any diagnosis.  Plaintiff cites "R. 339-340" for a June, 14, 2014 MRI showing disc herniation at L4-5 with neuroforaminal narrowing effecting the L4 and L5 nerve root.  However, 339-340 is a "History of Present Illness" form filled out in March 2013.  Further, there does not appear to be any note of neuroforaminal narrowing in the record.  The undersigned is confident that plaintiff is able to cite to the record because some citations are correct.  For example, plaintiff cites the assessed RFC at "R. 76" (Dkt. 14, at p. 11) which is indeed at page 76 of the transcript.

determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). Plaintiff points to diagnoses in the record—and some that are not in the record—to support her claim that she is more functionally limited than what is contained in the RFC. However, plaintiff did not point to medical evidence suggesting functional limitations caused by any diagnoses. Thus, her argument is unavailing.

In light of the foregoing analysis, substantial evidence supports the ALJ's RFC determination. Plaintiff has failed to demonstrate otherwise. Because the RFC is supported by substantial evidence, the decision must be affirmed. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Since the RFC is accurate, there is no error in the ALJ's hypothetical question (which mirrors the RFC) to the vocational expert.[3] (Tr. 102-03).

### 2.   Credibility Determination

The ALJ did not err in his credibility determination. Rather, for the reasons explained below, the ALJ fully supported his credibility determination. There is no compelling reason to disturb this determination.

"Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health &*

---

[3] Plaintiff states that the ALJ erred in finding work at Step Five. However, the ALJ did not reach Step Five in the analysis. Rather, he found at Step Four that plaintiff could perform her past relevant work and thus determined she was not disabled. (Tr. 80).

*Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 416.929. "Consistency between the plaintiff's subjective complaints and the record evidence tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the

opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

Plaintiff argues that the ALJ erred in using boilerplate language to evaluate her credibility when he stated "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision" and cites *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), in support. (Dkt. 14, at p. 14). Plaintiff is correct that the language the ALJ used is considered "boilerplate," but because the ALJ fully supported his decision in addition to using the "boilerplate" language, there is no error.

*Bjornson* criticized the Administration's use of boilerplate language, such as "After careful consideration of the evidence, the undersigned [administrative law judge] finds that the claimant's medically determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," in ALJ decisions stating that this language implies that the credibility determination is deferred until the ability to work is assessed and gives no clue as to what weight the ALJ gave to the testimony. *Id.* at 644-45. However, where, as here, the ALJ uses such language but follows it with additional discussion of specific reasons the subjective

statements conflict with the record, there is no error.  *See Thompson v. Comm'r of Soc. Sec.,* 2017 WL 3484224, at *11 (W.D. Mich. Aug. 15, 2017); *Stevenson v. Berryhill*, 2018 WL 850146, at *4 (E.D. Mich. Jan. 12, 2018), *report and recommendation adopted*, 2018 WL 836481 (E.D. Mich. Feb. 13, 2018) ("In this Circuit, boilerplate language is only cause for concern when it is not linked to evidence in the record.") (citing *Hemingway v. Comm'r of Soc. Sec.*, 2015 WL 4967060, at *8 (E.D. Mich. Aug. 19, 2015)).

In *Hemingway*, before the boilerplate language the ALJ summarized the plaintiff's subjective complaints.  2015 WL 4967060, at *8.  After the boilerplate language, the ALJ spent six paragraphs discussing the objective medical evidence related to the plaintiff's complaints of pain, then stated that the plaintiff's "allegations of disabling symptoms are not fully substantiated" and discussed the plaintiff's activities of daily living  *Id.*  Likewise here, before the boilerplate language, the ALJ spent six paragraphs summarizing her complaints, then after the language spent six paragraphs discussing the objective medical evidence.  (Tr. 77-79).  The ALJ then concluded,

> The medical records and the testimony describing Claimant's limitations demonstrate that such limitations will not interfere with the ability of Claimant to function independently, appropriately, effectively, and on a sustained basis.  The undersigned has considered Claimant's allegations and has found them inconsistent with the objective medical findings in the record.

> Claimant's testimony is not well supported by the
> objective medical evidence in the record and therefore
> not entitled to controlling weight.  Consideration has also
> been given to the reports of the State agency medical
> consultant as well as to other treating, examining, and
> non-examining medical sources.

Further, the ALJ is also required to consider details about the claimant's

pain, aggravating factors, type and effectiveness of medication, other measures to

relieve pain, and any other relevant factors.  SSR 96-7p, 1996 WL 374186 (July 2,

1996).[4]  The ALJ discussed plaintiff's complaints of pain and the fact that she does

modified water exercises and yoga, and takes muscle relaxers when the pain is so

severe she cannot concentrate.  (Tr. 77).  The ALJ discussed that on good days

plaintiff does some shopping and that she tries to walk frequently to keep her joints

loose and limber.  (*Id.*).  The ALJ also discussed that on bad days plaintiff says she

has trouble getting out of bed, dressing herself, and has problems concentrating

due to the pain.  (*Id.*).  However, the ALJ found that plaintiff's subjective

complaints were "exaggerated and inconsistent with the other evidence, including

the clinical and objective findings of record and are not a sound basis for decision-

making."  (Tr. 77-78).  The ALJ further stated,

> These facts in the record do not dispute that Claimant has
> conditions, which singly or in combination, may cause
> pain.  What these pieces of evidence suggest is that
> Claimant's symptoms may not be accurately reported,
> may not exist at the level of severity assumed by

---

[4] SSR 96-7p was superseded by 16-3p on October 25, 2017, after the ALJ's decision.

> Claimant's testimony at hearing and may have other
> mitigating factors against their negative impact on
> Claimant's ability to engage in work activity.  The above
> residual functional capacity, as determined by the
> undersigned, gives adequate weight to the facts as
> determined credible.

(Tr. 78).  The ALJ therefore provided a sufficiently specific explanation for the

credibility determination.  The undersigned finds no basis to disturb this

determination.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, and that defendant's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 26, 2018                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 26, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7850
                                           tammy_hallwood@mied.uscourts.gov